**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| **MONICA BELL, et al.** | |
| **Plaintiffs,** | |
| **v.** | **Case: 8:09-cv-02054-RWT** |
| **VS MANAGEMENT OF MD, INC. et al.,** | |
| **Defendants.** | |

**REPLY IN SUPPORT OF DEFENDANTS VS MANAGEMENT OF MD, GARY SILVERMAN
AND MICHELE SILVERMAN'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Brian Steinbach, Esq., Md. Bar No. 024849
Susan Gross Sholinksy (admitted pro hac vice)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
Tel.: (202) 861–0900
Fax: (202)-296-2882
Bsteinbach@ebglaw.com
Sgross@ebglaw.com

*Attorneys for Defendants VS Management of MD,
        Inc., Michele Silverman and Gary Silverman*

# **TABLE OF CONTENTS**

PAGE

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF SUPPLEMENTAL FACTS .......................................................... 3

III.   ARGUMENT ........................................................................................................ 5

   A.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST THE VS
       DEFENDANTS ................................................................................................. 5

      1.   The Complaint Does Not Allege Sufficient Facts to Demonstrate that Any of the VS
           Defendants Were "Employers" Under the FLSA or MWHL ................................. 5

      2.   The Complaint Also Does Not Allege Sufficient Facts to Demonstrate that any of the VS
           Defendants Were "Employers" Under the MWPCL ........................................... 11

      3.   Plaintiffs Fail to State a Claim for *Quantum Meruit* ........................................... 13

   B.   IN THE ALTERNATIVE, BASED ON THE UNDISPUTED FACTS, THE VS
       DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW .................. 13

      1.   The Termination of the Contract Means that VS Could Not Have Been an Employer For
           Purposes of the Allegations in the Complaint ..................................................... 14

      2.   The Undisputed Facts Establish that the VS Defendants Were Not the Plaintiffs'
           "Employer" Under the FLSA or the MWHL, the MWPCL, the MWHL, or Pursuant to Their
           *Quantum Meruit* Claim ................................................................................ 16

      3.   The Undisputed Facts Establish that the VS Defendants Were Not the Plaintiffs'
           "Employer" Under the MWPCL ...................................................................... 20

      4.   The Undisputed Facts Establish that the VS Defendants Were Not the Plaintiffs'
           "Employer" Pursuant to Their *Quantum Meruit* Claim ...................................... 21

   C.   DEFENDANTS GREG GARMON AND JEFFREY SILVERMAN HAVE SHOWN NO
       REASON WHY THE VS DEFENDANTS' MOTION SHOULD NOT BE GRANTED ....... 21

IV.   CONCLUSION .................................................................................................. 23

i

## I.  __INTRODUCTION__

Defendants VS Management of MD, Inc. ("VS"), Gary Silverman and Michele Silverman (collectively, the "VS Defendants") submit this reply (the "Reply") in support of their motion to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.

As set forth in the VS Defendants' opening Memorandum (hereinafter, "Memorandum"), Defendant VS is a Professional Employer Organization ("PEO"), whose sole relationship to the Plaintiffs was to process their payroll and handle certain other limited human resources functions on behalf of its client, Defendant Bethany Group, LLC ("Bethany"), pursuant to a contract between Defendant VS and Defendant Bethany that terminated effective January 31, 2009 (the "Contract"). The only allegation with respect to Defendants Gary Silverman and Michele Silverman is that they are the owners of defendant VS. Plaintiffs by their Complaint nonetheless seek to recover from the all of the VS Defendants (as well as the other defendants) wages allegedly due them for work they performed for Defendant Bethany during the period January 31, 2009 through February 28, 2009 (the "Disputed Period").

As discussed in detail in part III(A), below, in their Opposition to the Motion to Dismiss the Plaintiffs have failed to demonstrate that they have alleged facts sufficient to state the claims raised in the Complaint.[1] In particular, they have failed to point to alleged facts sufficient to support a finding that under the applicable tests any of the VS Defendants constitute an "employer" as defined by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") (Count I); the Maryland Wage Payment and

---

[1] For reasons best known to the Plaintiffs, they have submitted two separate oppositions: a sixteen page opposition to the motion to dismiss (Docket #22), hereinafter cited as "MTD Opposition," and a twenty-one page opposition to the alternative motion for summary judgment (Docket #23), hereinafter cited as "SJ Opposition."

Collection Law, Md. Code Ann., Lab. & Empl. § 3-401, *et seq.* ("MWPCL") (Count II); or the Maryland Minimum Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWHL") (Count III). Instead they erroneously attempt to misdirect this Court towards (i) different tests not applicable here, (ii) over-reliance on minor factors in disregard of more significant factors, (iii) assertions not supported by the record, (iv) case law involving entirely different facts, and (v) conclusory and legal conclusions regarding "employer" status. As they have failed to point to allegations sufficient to establish that any of the VS Defendants was an "employer," they also have failed to demonstrate their allegations are sufficient to state a claim of *quantum meruit* (Count IV) based on a contract implied-in-law. Therefore, the VS Defendants' motion to dismiss should be granted.

Alternatively, as discussed in detail in part III(B), below, the Court should grant the VS Defendants' motion for summary judgment because (i) the Plaintiffs have failed to show that there are any material issues of disputed fact that would preclude summary judgment on behalf of any of the VS Defendants;[2] and (ii) the Plaintiffs have failed to show the VS Defendants are not entitled to judgment as a matter of law. Indeed, this Court has <u>two alternative bases</u> on which to grant summary judgment.

First, and most simply, Plaintiffs do not dispute that on January 31, 2009 Defendant VS terminated the Contract – the sole basis on which Defendant VS ever had any liability to pay the Plaintiffs for the work they allegedly performed for Defendant Bethany. Plaintiffs have proffered no valid factual or legal argument to rebut the VS Defendants' position that as a matter of law the termination of the Contract forestalls any claim against the VS Defendants for work allegedly performed for Defendant Bethany during the Disputed Period. Thus, on this basis alone, their claims against the VS

---

[2] Plaintiffs have made no assertion pursuant to Fed. R. Civ. P. 56(f) that they are unable to present facts essential to justify their opposition.

Defendant fail as a matter of law. Indeed, the Plaintiffs do not even dispute that the termination of the Contract bars their MWPCL and *quantum meruit* claims.

Second, Plaintiffs have failed to show that any of the undisputed facts demonstrate that any of the VS Defendants exercised sufficient indicia of an "employer," as defined under the applicable statutes, to be liable to Plaintiffs under the FLSA, MWHL or MWPCL. Plaintiffs also have failed to show that the VS Defendants received any benefit from the work the Plaintiffs allegedly performed for Bethany during the Disputed Period. Accordingly, the VS Defendants are entitled to judgment as a matter of law on all four counts of the Complaint, *i.e.*, the FLSA, MWHL, MWPCL and *quantum meruit* claims.

Finally, as discussed in detail in part III(C), below, Defendants Greg Garmon and Jeffrey Silverman (the "GG/JS Defendants") have submitted a document styled as a separate Opposition (hereinafter the "GG/JS Opposition"), which in substance addresses only the VS Defendants' motion for summary judgment. The GG/JS Opposition also fails to show any basis for denying either of the VS Defendants' motions.

## II.  STATEMENT OF SUPPLEMENTAL FACTS[3]

Plaintiffs fail to dispute any of the facts set forth in the VS Defendants' Memorandum at 3-7. Instead, they have proffered additional facts that are either consistent with the facts stated by the VS Defendants or pertain to matters entirely irrelevant to the issues raised in this case. Where appropriate, these points are addressed in the discussion in part III(B), below. Similarly, the GG/JS Defendants also do not dispute any of the facts set forth by the VS Defendants and also adopt all but two of the facts set

---

[3] For the purposes of this motion to dismiss or in the alternative for summary judgment, the VS Defendants do not dispute the accuracy or admissibility of any of the facts or allegations set forth herein. However, if their motion is not granted, they reserve the right to dispute the accuracy of such facts or allegations in subsequent proceedings in this case including, but not limited to, at trial.

forth by the Plaintiffs, yet fail to proffer any evidence in support of this limited disagreement, as discussed in detail in part III(C), below. However, the additional facts submitted by Plaintiffs require some amplification of the facts previously set forth by the VS Defendants, as set forth below.

1. Defendant VS paid the Plaintiffs solely based on the time sheets it received from Defendant Bethany. It had no involvement or discretion at all over what hours were included on the time sheets. (Supplemental Declaration of Michele Silverman ("MS Supp. Dec."), ¶2,)

2. The last payroll period during which Defendant VS was in a PEO relationship with Defendant Bethany ended on January 30, 2009. (MS Supp. Dec. ¶3.) This was also the last payroll period prior to the Disputed Period. Defendant VS paid the Plaintiffs for this pay period on February 6, 2009. (Complaint, ¶68; MS Supp. Dec. ¶3,) Defendant VS made this payment despite the fact that it had not been paid by Defendant Bethany. (MS Supp. Dec. ¶4.)

3. If any of the Plaintiffs contacted Defendant VS during the period from January 31, 2009 through February 28, 2009, with an issue pertaining to that period of time, a representative from VS would inform the caller that he/she needed to contact Defendant Bethany directly, as Defendant VS had no involvement with Defendant Bethany's employees during that time. However, if the issue pertained to a prior period, when the contract between Defendant Bethany and Defendant VS was in effect, the VS representative would address it. (MS Supp. Dec. ¶5.)

4. Sometime in February 2009, an entity called Bethany MD Holdings Group LLC ("BMG") contacted Defendant VS, and stated that it wished to enter into a contract with VS, to provide services similar to those that Defendant VS previously had provided to Defendant Bethany. (MS Supp. Dec. ¶6.) To Defendant VS's knowledge, BMG is an entity owned partially by Defendant Bethany and partially by a company called Core Realty Holdings, LLC, and BMG had taken over the management of the

properties at which the Plaintiffs worked. (MS Supp. Dec. ¶7.) Defendant VS thereafter entered into a contract with BMG, which became effective on February 28, 2009, under which it issued paychecks and provided employment benefits to many of the Plaintiffs for work performed after that date. (MS Supp. Dec. ¶8.) This new contract between Defendant VS and BMG had nothing to do with Defendant VS's responsibilities under its prior contract with Defendant Bethany. (MS Supp. Dec. ¶9.) The contract between Defendant VS and BMG terminated on June 30, 2009. (MS Supp. Dec. ¶10)

## III. <u>ARGUMENT</u>

### A. PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST THE VS DEFENDANTS

As noted in the VS Defendants' Memorandum at 10, the Plaintiffs' claims against the VS Defendants in all four counts of their Complaint are based on the theory that the VS Defendants were the Plaintiffs' employers within the meaning of the FLSA, MWPCL, MWHL, or common law. However, in their Complaint the Plaintiffs have failed to allege facts – as opposed to legal conclusions – to support a claim that the VS Defendants were their employers. To the contrary, their own allegations show that their actual employer was Bethany, not any of the VS Defendants. As discussed below, their MTD Opposition fails to point to any allegations to the contrary. Consequently, they have failed to state a claim.

#### 1. The Complaint Does Not Allege Sufficient Facts to Demonstrate that Any of the VS Defendants Were "Employers" Under the FLSA or MWHL

Plaintiffs first expend considerable effort in suggesting that the VS Defendants somehow have relied upon the wrong test for determining whether or not the Complaint alleges sufficient facts to support a finding that any of them is an "employer" as defined by the FLSA and MWHL. In particular, they quote at length from portions of *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298 (4th Cir. 2006), that

address the primary issue in that case – whether or not the plaintiffs were independent contractors or employees within the meaning of the FLSA – and cite the six-factor test used by the Court on that point. (MTD Opposition at 7.) That discussion, however, is irrelevant to the present case, which does not involve any alleged independent contractor issues.

More to the point, Plaintiffs concede (MTD Opposition at 8-9) that the portion of *Shutlz* that actually addresses the more pertinent issue of joint employment found that the guiding principle courts must consider is the real economic relationship between the parties, and that "[t]he ultimate determination of joint employment must be based upon the 'circumstances of the whole activity.' *Bonnette [v. Calif. Health & Welfare Agency*], 704 F.2d [1465] at 1470 [(9th Cir. 1983(]." *Schultz*, 466 F.3d at 306. Notably, *Bonnette* utilizes the same four-factor test for determining <u>employer</u> status set forth by this Court in *Jackson v. Mayor and City Council of Baltimore City*, No. JFM 08-3103, 2009 WL 2060073, at *3 (D. Md. July 14, 2009) (Motz, J.) (*citing Bonnette*), and relied upon by the VS Defendants. (Memorandum at 11.) In addition, in *Newell v. Runnels,* 407 Md. 578, 649-53, 967 A.2d 729, 771-773 (2009), the Maryland Court of Appeals also adopted the *Bonnette* test as a basis for determining under the MWHL whether economic realities establish an employer relationship in an alleged joint employer situation. *See also Quinteros v. Sparkle Cleaning, Inc*., 532 F. Supp. 2d 762 (D. Md. 2008) (Williams, J.) (noting the *Schultz* court's suggestion that the *Bonnette* factors be considered).

Thus, it is evident that, contrary to Plaintiffs' argument, the four-part *Bonnette* test adopted in *Jackson* is the correct one to apply in determining whether a particular entity or individual constitutes an "employer" for the purposes of both the FLSA and the MWHL. Furthermore, where as here, the issue is dispositive, the question of whether an entity is an "employer" must be addressed before consideration

of whether a joint employment arrangement exists. *See Schultz,* 466 F.3d at 306 n.1 (recognizing that in certain circumstances this is necessary.)

Plaintiffs do not dispute that the Complaint fails to allege that any of the VS Defendants (1) had the authority to hire and fire the Plaintiffs, or (2) had the authority to supervise and control employee work schedules or conditions of employment, thus conceding that the Complaint fails to allege that the VS Defendants meet either of the first two factors of the *Bonnette* test. Plaintiffs nonetheless suggest that their failure to allege the supervision and control factor is not significant in light of the need to consider all relevant factors. (MTD Opposition at 10.) This argument is misplaced. While it is true that no one factor is controlling, it is the first two factors which most accurately reflect the traditional core functions of an employer, and therefore these should receive more weight than a ministerial factor such as who keeps the employees' employment records. In any event, Plaintiffs also fail to point to any allegation that any of the VS Defendants maintained their employment records.[4] Thus, the Complaint additionally fails to allege that this fourth factor is met.

With respect to the third factor, despite the myriad allegations that the Bethany Defendants, not the VS Defendants, had the authority to and actually did determine the Plaintiffs' rate and method of pay (*see* Memorandum at 12), Plaintiffs baldly assert that somehow a single allegation that they received paychecks issued by Defendant VS and interacted directly with VS with respect to any payroll issues (Complaint ¶61) also constitutes additional allegations that Defendant VS addressed the "method" of pay, including "the amount and type of benefits" provided, the amount of withholding, and payment of

---

[4] Plaintiffs instead point to evidence presented in support of the alternative motion for summary judgment that indicates that Defendant VS jointly maintains the Plaintiffs' employment records. (Opposition at 9, n.2, citing the Declaration of Michele Silverman.) Whatever the relevance may be of this evidence for the purposes of the alternative motion for summary judgment, it is irrelevant for the purposes of the motion to dismiss, which is based on the pleadings of the Complaint and documents referenced therein. *See HQM, Ltd. v. Hatfield, Inc.*, 71 F. Supp. 2d 500, 501-02 and cases cited therein (D. Md. 1999) (Williams, J.) (document referenced in Complaint considered; all others disregarded).

compensation for vacation and sick time. (MTD Opposition at 9-10.) Plaintiffs' failure to include citations to the Complaint to support these assertions is glaring:

> [T]he Complaint also alleges that the VS Management Defendants were directly involved in how the Defendants jointly determined the rate and method of pay to Plaintiffs and the other similarly situated employees. *[No citation]* The Complaint states that Defendant VS Management handled all payroll inquiries from Plaintiffs and the other similarly situated employees ([Complaint] at ¶61), addressing the "method" of pay to Plaintiffs and the other similarly situated employees, including the amount and type of benefits that Defendants jointly provided to Plaintiffs and the other similarly situated employees *[no citation]*; the amount of state and federal taxes to withhold from paychecks issued to the Plaintiffs and the other similarly situated employees *[no citation]*; and the payment of compensation to Plaintiffs and the other similarly situated employees for vacation and sick time. *[No citation.]*

*Id.* This improper attempt to avoid dismissal based upon unalleged claims should be rejected. *See HQM, Ltd.,* 71 F. Supp. 2d at 501-02. Furthermore, these unsupported and not previously alleged assertions confuse, on one hand, the specifically alleged ministerial tasks of issuing paychecks and addressing payroll issues, with, on the other hand, an employer's discretionary tasks of actually determining rates and method of pay, benefits, and whether to pay for vacation and sick time. Plaintiffs simply have not alleged that Defendant VS, much less all the VS Defendants, had any authority to <u>determine</u> the Plaintiffs' rate and method of pay, much less that they ever made any compensation decisions. Thus, the Complaint also fails to allege that the VS Defendants meet the third factor.

In addition, in apparent recognition of their failure to make any allegations in support of the four factors of the *Bonnette* test, the Plaintiff's place great weight on the fact that they allege that they were required to sign a form stating that they were employees of Defendant VS. (MTD Opposition at 9.) Contrary to Plaintiffs' contentions in this regard, as noted in the VS Defendants' Memorandum at 13-14 (and conveniently ignored in Plaintiffs' MTD Opposition), it is irrelevant what the employees may have been asked to sign, as it is the economic realities that control, not the terms of contract or the intent of

the parties. *See, e.g., Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000) (Smalkin, J.), *aff'd sub nom. Chao v. Mid-Atlantic Installation Servs., Inc.*, No. 00-2263, 2001 WL 739243 (4th Cir. July 2, 2001); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F. Supp. 2d 569, 578 (D. Md. 2008) (Blake, J.).

Notwithstanding their failure to point to any allegations that support a finding that the VS Defendants meet the *Bonnette* test, Plaintiffs make an ill-founded contention that two cases involving the very different situation of temporary agencies, which were directly involved in hiring and setting working conditions of temporary employees, somehow support a finding that they have sufficiently alleged that the VS Defendants meet the "economic realities" test as an employer. (MTD Opposition at 10-11.) The Plaintiffs conveniently omit a discussion of the facts of these cases. A review of the facts, however, clearly shows that those cases involved completely different circumstances from those alleged in this case by Plaintiffs.

For example, in *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998), the Court found that, unlike the allegations here, the evidence showed that the <u>temporary agency</u> Baystate met all four factors of the *Bonnette* test. In particular, the Court found that Baystate was solely responsible for hiring the employees; had the power to refuse to send them back to a job site where they had performed unsatisfactorily; supervised and controlled work schedules, conditions of employment, and the time at which they reported to its offices; screened for qualifications; decided who would be assigned where; sometimes provided transport; instructed employees what to wear and how to behave; and banned direct contact with a client company about potential job opportunities. *Id.* at 675-76. Baystate also exercised indirect supervisory oversight through communications with client companies regarding performance issues and, unlike VS, retained the authority to intervene if problems arose with a

worker's job performance; as a consequence, the Court found that on the facts of this case the absence of direct, on-site supervision did not preclude a determination of employer status. *Id*. at 676. The Court further found that Baystate exercised "unfettered discretion" in setting pay rates and method of payment, and handled all employment records. *Id*. Baystate's operations thus differed radically from the limited payroll servicing that the VS Defendants are alleged to have provided.

Similarly, in *Preston v. Settle Down Enters.*, 90 F. Supp. 2d 1267 (N.D. Ga. 2000), the Court also applied the *Bonnette* test in finding that Settle Down, a provider of temporary labor, was a joint employer of the employees because it "recruited, transported, paid and maintained records for workers;" decided who to send to various job sites; set the rate of pay and elected to pay by voucher; and told employees when its vans would arrive to take them to the job sites. *Id*. at 1274.[5] Again, these operations differed radically from the limited involvement Plaintiffs allege the VS Defendants had.

Finally, the Plaintiffs attempt to ignore their failure to allege that either Defendant Gary Silverman or Defendant Michele Silverman took any action "directly or indirectly in the interest of the other employer in relation to the employee" by contending that the mere fact that they have alleged that they are owners of Defendant VS is sufficient to state a claim that they are employers within the meaning of the FLSA and MWHL. (MTD Opposition at 11-12.) Contrary to this argument, in both the cases Plaintiffs cite, *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983), and *Donovan v. Tavern Talent & Placements*, Inc., No. 84-F-401, 1986 WL 32746 (D. Colo. Jan. 8, 1986), there was evidence that the individual defendants were corporate officers who exercised operational control over significant aspects of day to day functions, in particular with respect to employment matters. *Agnew*, 712 F.2d at 1514; *Tavern Talent*, 1986 WL 32746 at *3-4. Thus mere ownership status was not enough to establish

---

[5] The court further found that Settle Down's "consultant," who controlled its day to day operations, also was an employer under the same economic realities test. *Id.* at 1275.

"employer" status. As Plaintiffs admittedly rely solely on their allegation of ownership as a basis for imposing liability on Defendants Gary and Michele Silverman, they fail to state a claim against them on this basis as well.

Accordingly, Plaintiffs' MTD Opposition fails to show that their Complaint contains sufficient factual allegations that any of the VS Defendants exercised any of the indicia of an "employer" under either the FLSA or the MWHL. Rather, they continue to rely solely on factually unsupported allegations of the legal conclusion of "employer" status, which is insufficient to meet the pleading standards imposed by *Twombly* and *Iqbal*. Therefore, the claims against the VS Defendants in Counts I and III under the FLSA and MWHL should be dismissed for failure to state a claim.

> **2.     The Complaint Also Does Not Allege Sufficient Facts to Demonstrate that any of the VS Defendants Were "Employers" Under the MWPCL**

Plaintiffs apparently do not dispute that the definition of "employer" under the MWPCL is narrower than that in the FLSA and the MWHL and is not subject to a broad interpretation. Indeed, they entirely fail to address this Court's decision in *Watkins v. Brown,* 173 F. Supp. 2d 409 (D. Md. 2001) (Gesner, M.J.), which rejected a broad interpretation, and in effect adopted the common law definition. Plaintiffs also do not dispute that the allegations of the Complaint fail to suggest that any of the VS Defendants meet this narrower definition of "employer," including that there is no allegation that the VS Defendants hired any of the Plaintiffs; that the Complaint alleges that it was Defendant Bethany, not any of the VS Defendants, that told Plaintiffs how to fulfill their duties; and that there are no allegations that either Gary or Michele Silverman employed any individuals themselves or took actions to exercise any form of direction or control over the Plaintiffs' work. Indeed, Plaintiffs do not dispute that mere ownership of a company is not enough to make an individual constitute an "employer" within the meaning of the MWPCL. (*See* Memorandum at 15-17.)

Instead, Plaintiffs attempt to distract this Court by engaging in an extensive discussion of *Baltimore Harbor Charters, Ltd v. Ayd*, 365 Md. 366, 780 A.2d 303 (2001) (MTD Opposition at 12-13), a decision that is generally irrelevant as it addresses the MWPCL definition of "employee," *i.e.*, as opposed to being an independent contractor or officer of a company – <u>not</u> the definition of an "employer." *See id.* at 384-392, 780 A.2d at 313-319. The only relevance *Baltimore Harbor Charters* has to the present case is that its application of common law principles to the definition of "employee" <u>supports</u> the application of those same principles to the definition of "employer," as the *Watkins* decision expressly noted. *See Watkins,* 173 F. Supp. 2d at 415. Thus, to the extent *Baltimore Harbor Charters* is relevant at all, it supports the position of the VS Defendants.

Notwithstanding its inapplicability to the issues in the present case, and apparently drawing on one of the six factors for determining *employee* (not employer) status stated in *Baltimore Harbor Charters*, *i.e.*, whether the employer had the "right to exercise control" over the individual, *see Baltimore Harbor Charters,* 365 Md. at 392-93, 780 A.2d at 319-19, Plaintiffs nonetheless contend that the VS Defendants meet the definition of "employer" because they allegedly "could have" exercised control over the Plaintiffs. (MTD Opposition at 13.) However, assuming for the purposes of argument only that this factor has any relevance to "employer" status, Plaintiffs point to no place in the Complaint where they make such an allegation. Indeed, such an allegation is contrary to their separate allegations that it was the Bethany Defendants that exercised such control. Particularly in light of such allegations regarding the Bethany Defendants, the mere allegations that (1) Defendant VS issued paychecks and (2) Defendants Michele and Gary Silverman own Defendant VS, in no way provide a basis for inferring that they "could have" exercised control.

Accordingly, all claims in Count II under the MWPCL against both Defendant VS and Defendants Gary and Michele Silverman should be dismissed for failure to state a claim.

### 3.    Plaintiffs Fail to State a Claim for *Quantum Meruit*

In their MTD Opposition, Plaintiffs clarify that their *quantum meruit* claim is based on a theory of contract implied in law, *i.e.*, that there should be restitution for a benefit allegedly conferred upon the Defendants, measured by the gain to the Defendants, not the loss by the Plaintiffs. (MTD Opposition at 15). *See Mogavero v. Silverstein*, 142 Md. App. 259, 276, 281, 790 A.2d 43, 52-53, 55 (2002). This does not, however, change the fact that, for the reasons already discussed, the allegations of the Complaint are insufficient to establish that any of the VS Defendants was an "employer." Moreover, because the allegations are insufficient to establish that any of the VS Defendants was an "employer," the vague and generalized allegation that Plaintiffs conveyed a benefit upon unspecified "Defendants" (Complaint ¶85) is insufficient to establish that the Plaintiffs conferred any benefit upon Defendant VS by working for Defendant Bethany, or especially upon either Gary or Michele Silverman as individuals by working for Defendant VS and/or Defendant Bethany. Accordingly, whatever may be the case as to other defendants, the Complaint fails to state a claim against the VS Defendants.[6]

### B.    IN THE ALTERNATIVE, BASED ON THE UNDISPUTED FACTS, THE VS DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

Assuming, for the purposes of argument only, that the allegations of the Complaint somehow are sufficient to state a claim under one or more of the four counts, Plaintiffs' SJ Opposition fails to establish any basis not to grant the VS Defendants' alternative motion for summary judgment. Indeed,

---

[6] In addition, as noted in the VS Defendants' Memorandum at 19 and discussed in greater detail in part III(B)(1) and (4), below, in light of Defendant VS's termination of its contract with Defendant Bethany on January 31, 2009, during the Disputed Period neither Defendant VS nor either Gary or Michele Silverman possibly could have received any benefit from the Plaintiff's labor, and therefore there is no basis for a *quantum meruit* claim.

Plaintiffs fail to dispute any of the facts on which the VS Defendants rely. Furthermore, the additional facts that they now present are either consistent with the facts previously presented or entirely irrelevant to the issues raised in this case.

**1.   The Termination of the Contract Means that VS Could Not Have Been an Employer For Purposes of the Allegations in the Complaint.**

Plaintiffs do not dispute that any responsibilities of an "employer" that Defendant VS as a PEO may have fulfilled were provided solely due to its contract with Defendant Bethany. They also do not dispute that under its terms, Defendant VS could terminate this contract upon Defendant Bethany's failure to pay Defendant VS; that on notification of termination, among other things, all the employees were to be deemed to have been laid off by VS and Bethany automatically assumed all obligations of an employer; and that Defendant VS gave such notice on January 31, 2009. (*See* Memorandum at 20-21; Declaration of Michele Silverman ("MS Dec.") ¶¶25-32 and Exs. A and B thereto.) As the contract terminated on January 31, 2009, there is simply no basis to impose any liability on the VS Defendants to pay Plaintiffs thereafter.

Plaintiffs nonetheless – without any legal support for such a proposition – contend that despite the fact that the contract was terminated, the VS Defendants somehow continued to be "employers" as defined in the FLSA and the MWHL, and that they could not "contractually vitiate their statutory obligations under the FLSA and MWHL." (SJ Opposition at 19.)[7] In so doing, however, the Plaintiffs ignore the fact that whatever obligations the VS Defendants may have had to pay the Plaintiffs, or for that matter whatever other alleged indicia of being an "employer" there may have been, were solely a creature of the contractual arrangement between VS and Bethany in the first place. Tellingly, Plaintiffs

---

[7] Plaintiffs do not contest that the termination of the contract bars any liability under the MWPCL or *quantum meruit*, and therefore the Court should enter judgment in the VS Defendants' favor on Counts II and IV as undisputed.

cite no law for this assertion that the termination of a contract that creates whatever "employer" obligations that might exist has no legal effect and that therefore the entity remains an "employer" until the end of time. Such an assertion is entirely contrary to the principle that the clear intentions of the parties to an agreement should be enforced. *Middlebrook Tech., LLC v. Moore*, 157 Md. App. 40, 66, 849 A.2d 63, 78-79 (2004). Moreover, this case does not raise a question of an entity attempting to contract away its statutory obligations. Rather, just as prior to the contract Defendant VS (or the other VS Defendants) had no payment obligation or any other indicia of an "employer," so too after the contract ended Defendant VS (and the other VS Defendants) ceased, as a matter of law, to have any such responsibility or indicia. Plaintiffs essentially are contending that the contract upon which they rely so heavily to deem Defendant VS an "employer" of the Plaintiffs now has no matter, and that the termination of that contract has no legal effect. The Plaintiffs cannot have it both ways.[8]

Plaintiffs also confuse a formal termination of the contract, which occurred on January 31, 2009, with a mere failure by Defendant Bethany to pay Defendant VS. A failure to pay merely <u>permitted</u> termination of the contract going forward. Nonetheless, until the contract was terminated, Defendant VS still had a contractual obligation to pay the Plaintiffs. Indeed, Defendant VS recognized this obligation by paying the Plaintiffs on February 6, 2009 for the pay period ending on January 30, 2009 despite the fact that it had not received payment from Defendant Bethany to cover this cost. (MS Dec. at ¶29, MS Supp. Dec. at ¶4.) It is the termination of the contract (which contract delegated Defendant Bethany's obligation to pay its employees to Defendant VS), not Defendant Bethany's failure to pay, that ended all

---

[8] In this regard it is irrelevant whether the Plaintiffs may have continued to perform work during the Disputed Period. To the extent they did so, any such work would have been under the control of and at the direction of Defendant Bethany. (Indeed, the Plaintiffs concede that Defendant Bethany <u>always</u> directed all work.) If Defendant VS never directed the Plaintiffs' work during the term of the contract, there is certainly no support for any argument that it did so during the Disputed Period. Indeed, once the contract between Defendant Bethany and Defendant VS terminated, Defendant Bethany had the sole responsibility for requiring, and therefore paying for, any work to be performed by Plaintiffs.

obligation for Defendant VS (or any of the other VS Defendants) to pay Plaintiffs for work they may have performed for Defendant Bethany beginning on January 31, 2009 and continuing through February 28, 2009 (*i.e.*, during the Disputed Period).

Accordingly, the termination of the contract alone provides a more than sufficient basis to grant summary judgment in favor of the VS Defendants.

### 2. The Undisputed Facts Establish that the VS Defendants Were Not the Plaintiffs' "Employer" Under the FLSA or the MWHL, the MWPCL, the MWHL, or Pursuant to Their *Quantum Meruit* Claim

Plaintiffs do not dispute any of the facts upon which the VS Defendants rely in support of their alternative motion for summary judgment.[9] Thus, they concede that Defendant VS's responsibilities with respect to the Plaintiffs were limited to providing employment paperwork; paying their paychecks; providing worker's compensation insurance and health insurance benefits; providing a form for use in requesting time off from work (without any involvement in approving or disapproving these requests); and jointly with Defendant Bethany maintaining Plaintiffs' employment records. (*See* Memorandum at 22). Plaintiffs also do not dispute that there was only one occasion, when Bethany first took over the properties and hired its employees, that anyone from Defendant VS ever met any of the Plaintiffs. (MS Dec. ¶¶14-16.) Nor do they dispute that Defendant Bethany was responsible for all the traditional functions and duties of an employer. (*See, e.g.,* Memorandum at 23 and MS Dec. ¶¶13 and 16-20.) Nothing in the three declarations submitted in support of their SJ Opposition is to the contrary. At most,

---

[9] Plaintiffs submit declarations from three of them, each of which contains conclusory statements that they were "jointly employed" by, "worked for," and/or experienced "employment by" all of the named defendants. SJ Opposition Ex. 1 at ¶¶2, 3, 5, and 15; Ex. 2 at ¶¶2, 3, and 5; Ex. 3 at ¶¶2, 3, 5, and 13. It is well established that the issue of whether the facts support a finding that an entity is an employer within the meaning of the applicable statutes is a question of law for this Court to determine. *See, e.g., Bonnette*, 704 F.2d at 1468-69. By contrast, a declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [declarant] is competent to testify on the matters stated." Fed. R. Civ. P. 56 (e)(1). Accordingly, these conclusory statements of law must be disregarded.

the declarations only reinforce these issues, *e.g.,* by pointing out that paychecks and W-2s came from Defendant VS.[10]

Plaintiffs instead seek to confuse this Court by discussing additional facts that have no relevance to the question of whether the VS Defendants were their "employer" during the Disputed Period. First, they appear to place great significance on the Employee Acknowledgment form they were required to sign. (SJ Opposition at 13.) As discussed in part III(A)(1), above, however, it is irrelevant what the employees may have been asked to sign, as it is the economic realities that control, not the terms of contract or the intent of the parties.. *See, e.g., Herman;; Montoya.*

Next, Plaintiffs assert that they continued to interact with Defendant VS regarding payroll and human resources questions during the Disputed Period. (SJ Opposition at 14.) Rather conveniently, however, they do not state the nature of the payroll and human resources questions raised, nor do they allege whether, upon receiving such inquiries, Defendant VS responded to those inquiries simply by referring the Plaintiffs to Bethany, as their only employer. As Defendant VS continued to pay the Employees through the pay period ending January 30, 2009, and this paycheck did not issue until February 6, 2009 (MS Supp. Dec. ¶3), interaction with Defendant VS on such issues is in no way indicative of any continued "employer" status.[11] In addition, any questions concerning issues arising on

---

[10] Although not referenced in the SJ Opposition, two of the declarations assert that throughout their employment the declarants were directed to take time off in lieu of overtime wages. SJ Opposition Ex. 1 at ¶15 and Ex. 3 at ¶12. This is entirely irrelevant to the pending motions, as (1) Plaintiffs seek to recover only wages allegedly due for the Disputed Period and (2) the question of what, if any overtime pay was due during the Disputed Period is only pertinent if the VS Defendants are first found to be "employers" of the Plaintiffs. In addition, it would have been impossible for the VS Defendants to have denied any overtime pay, as VS paid the Plaintiffs solely based on the time sheets it received from Bethany and had no discretion at all over what hours were included on the time sheets. (*See* MS Supp. Dec. at ¶2).

[11] Plaintiffs' supporting declarations also reference continuing to receive a paycheck from Defendant VS during the Disputed Period. SJ Opposition Ex. 1 at 12, Ex. 2 at 13, and Ex. 3 at ¶12. This is an obvious reference to the paycheck of February 6, 2009, covering the period through January 30, 2009, which provides no support for any contention that Defendant VS continued to be an "employer" during the Disputed Period. It is obvious that if Defendant VS had continued to issue paychecks for work done during the Disputed Period, there would be no lawsuit seeking to recover pay for this work.

or after January 31, 2009 were referred to Defendant Bethany. (MS Supp. Dec. ¶5.) Plaintiffs'
generalized claim to have raised issues with Defendant VS during the Disputed Period must yield to the
specific evidence that Defendant VS only discussed with them issues pertaining to the period prior to the
Disputed Period [12]

Similarly, the mere fact that Defendant Garmon continued to copy Defendant Gary Silverman on
e-mails he sent to employees about delayed payroll during the Disputed Period (as he had done on
similar emails before the Disputed Period)[13] in no way supports a finding of any continued "employer"
status.

Plaintiffs then turn to a complete red herring: the fact that Defendant VS later entered into an
agreement with a company named Bethany MD Holdings Group LLC ("BMG")[14] to provide services
similar to those previously provided to Defendant Bethany, and in connection with an agreement in
place from February 28, 2009 through June 30, 2009 provided payroll and human resources services to
BMG. (SJ Opposition at 13.) This is irrelevant for two reasons: (1) it involves the time period after the
Disputed Period for which Plaintiffs seek recovery; and (2) BMG is not a named defendant and, as set
forth in part II, above, is a completely different entity than Defendant Bethany to which Defendant VS
provided services under a different and new contract – one that is irrelevant to this case. Thus,
Defendant VS's agreement with BMG is neither a continuation nor a reiteration of its prior agreement

Furthermore, the only pay stubs submitted by Plaintiffs all post-date the Disputed Period. *See* SJ Opposition Ex. 1 at
Attachment A; Ex. 2 at Attachment A; and Ex. 3 at Attachment A.

[12] Representatives of Defendant VS may also have spoken with one or more of the Plaintiffs during the period after February
28, 2009, when Defendant VS was in a contractual relationship with BMG, to the extent the particular Plaintiff remained an
employee at the applicable Maryland property. However, this period of time began after the end of the Disputed Period. MS
Supp. Dec. at ¶¶8, 10.

[13] *See* SJ Opposition Ex. 1, Attachment 3.

[14] As noted in part II, above, to the VS Defendants' knowledge, BMG is an entity owned, in part, by Defendant Bethany, and
in part by a company called Core Realty Holdings LLC. (MS Supp. Dec. ¶7.)

with Bethany. Moreover, even if it was, this would not change the fact that during the Disputed Period, Defendant VS had no contractual relationship with Defendant Bethany and therefore no obligation to make any payments to the Plaintiffs.

Plaintiffs next turn from discussing irrelevant facts to attempting to assert that reliance on the four *Bonnette* factors utilized by Judge Motz in *Jackson* somehow is inconsistent with *Schultz*. As discussed in part III(A)(1) above, however, the *Bonnette* factors are entirely consistent with the portion of *Schultz* that addresses the concept of joint employment, as opposed to the portion that addresses the independent contractor/employee dichotomy (which is irrelevant here). Further, Plaintiffs do not even attempt to argue how application of the *Bonnette* factors can yield any result other than a finding that the VS Defendants were not their employer.

Plaintiffs' next diversionary tactic is to attempt to denigrate the persuasive value of the decision in *Vondriska v. Paychex Bus. Solutions, Inc.*, No. 8:07-CV-1322-T-24-TGW, 2009 WL 632889 (M.D. Fla. Mar. 11, 2009), by portraying it as merely a "Florida District Court decision on separate facts." (SJ Opposition at 15). Contrary to Plaintiffs' bald assertions in this regard, and as set forth in detail in the VS Defendants' Memorandum at 22-25, the facts in *Vondriska* are <u>virtually identical</u> to the facts here, and the *Vondriska* Court also applied the economic realities test. In particular, the PEO defendant in *Vondriska* also: issued and paid payroll checks; provided human resources services; required employees to complete a new employee packet; and informed employees that they were considered the PEO's employees. *Id.* at *4. Accordingly, Plaintiffs are simply wrong when they assert (SJ Opposition at 16) that the PEO in *Vondriska* only provided payroll services. Furthermore, although the *Vondriska* Court used a slightly different approach for applying the economic realities test (*i.e.*, that used in the Eleventh Circuit), the factors are essentially the same. *See id.*, 2009 WL 632889, at *7.

Finally, Plaintiffs' last effort at avoiding summary judgment on their FLSA and MWHL claims is to reiterate the same arguments raised in their opposition to the motion to dismiss regarding decisions involving temporary agencies that are directly involved in the hiring and oversight of their employees. For the reasons already discussed in part III(A)(1) above, both these decisions, *Baystate Alternative Staffing, Inc.,* and *Preston*, are inapplicable because of the far greater involvement in day-to-day employment issues that those <u>temporary agencies</u> had, including but not limited to hiring, assigning, setting rates of pay, disciplining and terminating.

In sum, based on the undisputed facts, the evidence is insufficient to establish that any of the VS Defendants was an "employer" within the meaning of the FLSA or MWHL, in particular during the Disputed Period. Therefore, the VS Defendant s are entitled to summary judgment on Counts I and II.

> ### 3.   The Undisputed Facts Establish that the VS Defendants Were Not the Plaintiffs' "Employer" Under the MWPCL

In opposition to summary judgment on their MWPCL claim, Plaintiffs simply reiterate the same arguments they made in opposition to the motion to dismiss. (*Compare* SJ Opposition at 17-18 *with* MTD Opposition at 12-13.) For the reasons stated in part III(A)(2) above, whether the VS Defendants "could have" exercised control over the Plaintiffs is of no matter. Furthermore, assuming (for the purposes of argument only) that this possibility has any relevance to "employer" status, Plaintiffs point to no evidence to support their bald assertion that the VS Defendants "could have" exercised control over the Plaintiffs. Indeed, as previously noted, such an allegation is contrary to their separate allegations – and the undisputed facts – that it was the Bethany Defendants that exercised such control. As Plaintiffs have failed to dispute any of the facts showing that none of the VS Defendants was an "employer" within the meaning of the MWPCL, the VS Defendants are entitled to summary judgment on Count II as well.

**4.    The Undisputed Facts Establish that the VS Defendants Were Not the Plaintiffs' "Employer" Pursuant to Their *Quantum Meruit* Claim**

Finally, in opposition to summary judgment on their *quantum meruit* claim, Plaintiffs merely reassert their arguments in opposition to the motion to dismiss this claim. (Compare SJ Opposition at 18 with MTD Opposition at 14-15.) In addition to the reasons stated in part III(A)(3) above for rejecting these arguments and finding that the Complaint fails to state a claim in *quantum meruit* against the VS Defendants, however, summary judgment should be granted for one additional reason: the uncontested fact that, as discussed above, Defendant VS had terminated its contract with Defendant Bethany on January 31, 2009. As a consequence of this termination, Defendant VS no longer was entitled to receive any payment from Defendant Bethany in connection with the labor of the Plaintiffs, and therefore neither Defendant VS nor either Gary or Michele Silverman possibly could have received any benefit from the Plaintiffs' labor during the Disputed Period, much less inequitably received the benefits of that labor without paying for its value. Accordingly, the entire justification for Plaintiffs' *quantum meruit* claim – the alleged retention of a <u>benefit</u> without pay for its value, under a contract implied in law – simply does not exist for the Disputed Period for which Plaintiffs seek recovery. Accordingly, the VS Defendants are entitled to summary judgment on Count IV.

**C.   DEFENDANTS GREG GARMON AND JEFFREY SILVERMAN HAVE SHOWN NO REASON WHY THE VS DEFENDANTS' MOTION SHOULD NOT BE GRANTED**

Although Defendants Greg Garmon and Jeffrey Silverman ("GG/JS Defendants") have filed a document styled as an Opposition to the VS Defendants' "Motion to Dismiss or for Summary Judgment" ("GG/JS Opposition"), the body of that document addresses only the motion for summary judgment. Accordingly, the GG/JS Defendants have conceded that the motion to dismiss should be

granted, and this Court need go no further. In any event, for the reasons set forth below the GG/JS Defendants also have stated no basis for denying the VS Defendants' motion for summary judgment.

The GG/JS Defendants first state that they adopt all of facts asserted by the Plaintiffs in their MTD Opposition and SJ Opposition, except they deny they were "employers" as defined under each of the four claims and further deny any liability under those claims. (GG/JS Opposition at 3.) However, they present no evidence whatsoever in support of their claims. Under Fed. R. Civ. P. 56(e), a party opposing summary judgment may not rely merely on allegations or denials, but must by affidavit, or as otherwise provided in the rules, set out specific facts showing a genuine issue for trial. Mere assertions in an unsworn pleading that they are not "employers" do not remotely approach this requirement and must be disregarded. *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Accordingly, the GG/JS Defendants must be held to have adopted the undisputed facts set forth by the VS Defendants and the Plaintiffs.

The GG/JS Defendants nonetheless contend that there is an issue of fact because: (1) the contract between Defendant VS and Defendant Bethany provided that, upon completion of certain forms and notification of hire by Defendant Bethany, individuals became "employees" of Defendant VS; and (2) under the contract VS allegedly retained authority to exercise direction and control over the "employees." (GG/JS Opposition at 3-4.) Contrary to the GG/JS Defendants' assertion, neither of these factors is relevant to the issues at hand.

First, as previously noted in part III(A)(1) with respect to the form that the Plaintiffs were asked to sign, it is the economic realities that control, not the terms of contract or the intent of the parties. Second, and similarly, what is relevant is not the terms of a contract allocating responsibility for certain employment functions as between Defendant Bethany and Defendant VS, but rather, any actual

responsibility that the VS Defendants had as to the Plaintiffs – *i.e.,* whether they meet the pertinent test for "employer" status. Moreover, as discussed above this contract was terminated on January 31, 2009, and therefore has no applicability to the Disputed Period.

Accordingly, the GG/JS Defendants also have stated no basis for denying the motion for summary judgment.

## IV. <u>CONCLUSION</u>

For the reasons set forth above and in the VS Defendants' opening Memorandum, the VS Defendants (VS Management of MD, Inc., Gary Silverman and Michele Silverman) respectfully request that the Court grant their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss the Complaint in its entirety as to them, with prejudice. In the alternative, the VS Defendants respectfully request that the Court grant their motion for summary judgment pursuant to Fed. R. Civ. P. 56, and enter judgment in favor of them and against the Plaintiffs. The VS Defendants further ask that the Court grant such other relief as is proper.

Respectfully submitted,

_____/s/_____
Brian Steinbach, Esq. Md. Bar No. 024849
Susan Gross Sholinsky (pro hac vice)
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
Tel.: (202) 861-0900
Fax: (212) 296-2882
bsteinbach@ebglaw.com
sgross@ebglaw.com

Attorneys for Defendants VS Management of MD, Inc., Michele Silverman, and Gary Silverman

Dated: October 28, 2009